

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NUMBER 04-214 |
| JAMES CHANCEY | SECTION "L" (3) |

## ORDER & REASONS

Before the Court is the Defendant James Chancey's Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145 (Rec. Doc. 140). For the following reasons, Defendant's motion is DENIED.

## I. BACKGROUND:

On July 16, 2004, Defendants James Chancey, Richard Price, and Michael Norve were charged with conspiracy to commit arson, mail fraud, interstate travel to aid racketeering, violation of the federal firearm statute and use of fire to commit a federal felony, as well as the underlying substantive offenses in which the defendants were specifically involved. The 12-count indictment alleges that James Chancey, the owner and operator of Vernon's Cycle Shop, was the organizer and leader of the conspiracy involving five or more participants beginning before February 5, 1998 and continuing through July 16, 2004. Both Richard Price and Michael Norve were allegedly customers of Vernon's Cycle Shop and associates of Chancey. According to the indictment, Chancey organized a conspiracy to commit criminal conduct to benefit the cycle shop and its customers. The conspiracy consisted of instituting a scheme to bill the Jefferson Parish Sheriff's Office for motorcycle parts never actually delivered or received by the

Sheriff's Office from February 1998 to March 2003, attempting to obstruct justice by setting fire to the Plaquemines Parish Courthouse in order to destroy records of state criminal cases pending against Chancey's customers and motorcycle associates, and soliciting and planning arson-for-hire on behalf of Norve and Price. Chancey is also charged with knowingly possessing a machine gun at the cycle shop.

In the counts alleging obstruction of justice and arson of the Plaquemines Parish Courthouse, the indictment explains that on or about December 2001, Chancey referred a female employee of the cycle shop to a customer who was the owner and landlord of the building that housed the Plaquemines Parish Detective's Bureau so that the woman could gain access to the Sheriff's office files. The female employee engaged in sexual relations with the customer in order to gain access to the Detective Bureau. At some time around December 2001, the female employee entered the Bureau and removed witness statements from a specific case file. On or about January 12, 2002, Chancey allegedly set fire to the Plaquemines Parish Courthouse in order to destroy criminal records, causing more than $2,500,000 worth of damage.

As another part of the conspiracy, Chancey allegedly traveled from Louisiana to Mississippi on January 10, 2002, in order to burn down Price's dwelling, for which Chancey received a $5,000 check from Price made payable to Vernon's Cycle Shop. The Government claims that Price then used the U.S. mail to submit an insurance claim to MetLife Auto and Home Insurance, which paid to Price $48,150. The indictment also alleges that Chancey traveled from Louisiana to Mississippi on March 5, 2002, to commit arson of Norve's truck, at Norve's request. Norve allegedly paid Chancey for the job and also used the U.S. mail to submit an insurance claim to Progressive Insurance Company, which paid $13,667.50.

On June 9, 2004, prior to Chancey's indictment, the criminal Magistrate Judge held a detention hearing and ordered Chancey to be detained before trial. At this hearing, John Carlton, an agent with the Bureau of Alcohol Tobacco and Fireman ("ATF") testified on behalf of the United States. Agent Carlton testified that an auto-ordinance Thompson submachine gun was found in Vernon's Cycle Shop. In addition, he testified as to remaining counts specified in Chancey's indictment.[1] Finally, Agent Carlton testified that a confidential witness, who was in protective custody, reported that Chancey threatened her not to cooperate with the government. In making this threat, Agent Carlton testified that Chancey showed the confidential witness a human finger contained in a jar at the cycle shop and said, "That person pointed that finger at me and accused me, and that's what happened to that person."

On July 14, 2004, Chancey moved to reopen the detention hearing. On July 20, 2004, the magistrate heard the motion and denied it. No witnesses testified at this hearing.[2] In fact, the only addition evidence presented at this hearing was the willingness of Chancey's family, members of which were present at the hearing, to sign a bond for $20,000 and deposit $2,000 with the court.

On July 21, 2005, Chancey moved for a reconsideration of the previous detention order. The motion was heard on July 27, 2005, and the magistrate again denied the motion. At this hearing, the United States did not present any witnesses. Chancey, however, presented four

---

[1] At the time of the hearing, Chancey was only charged with knowingly possessing a machine gun. This charge was brought in a complaint. The United States, however, informed the magistrate that it intended to file additional charges against Chancey. Those additional charges are now part of the indictment.

[2] James Lamy, a pretrial services officer, was not called as a witness, but did answer questions directed to him by the Magistrate Judge.

witness: (1) Edgar Casey, a staff investigator for the Federal Public Defender's Office; (2) Officer Lamy; (3) Terry Chancey, one of Chancey's daughter; and (4) Tammy Chancey, another of Chancey's daughter. First, Investigator Casey testified that neither the ATF through its execution of a search warrant, any other law enforcement agency, nor any witness interviewed by him has ever found a finger in a jar in the cycle shop. In addition, Investigator Casey testified that he and Agent Carlton brought the Thompson submachine gun to Plaquemines Parish Shooting Range so that Investigator Casey could test fire the weapon. From his testing, Investigator Casey further testified that the weapon, when the selector switch was set to fully automatic, failed to fire more than one shot before jamming. As a result of Investigator Casey, Chancey argued that the weapon was not a machine gun as defined in the United States Code.

Second, Officer Lamy testified regarding his duties as a pretrial services officer, his scope of knowledge in drafting his pretrial report, and his recommendation that Chancey be detained prior to trial. Lastly, Terry and Tammy Chancey both testified as to their relationship with their father, their familiarity with the cycle shop, and their willingness to sign as a personal surety for their father.

## II. PRESENT MOTION

On December 20, 2005, Chancey filed a Motion for Expedited Hearing on Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145. The Court granted Chancey's request for an expedited hearing and set the motion for hearing on December 29, 2005.

On December 29, 2005, Chancey moved to continue the hearing because he was unable to secure the attendance of a witness—one of his daughters. The Court granted the continuance and reset the motion for hearing on January 5, 2006.

On January 5, 2006, the Court heard evidence and argument by the parties. At the hearing, the United States presented Michael Hutton, an ATF agent, as a witness. Chancey once again presented Officer Lamy, Tammy Chancey, and Terry Chancey as witnesses. Additionally, Chancey presented the video deposition of B.R. Duckworth. Agent Hutton testified that two confidential witness, who had been incarcerated with Chancey and become friendly with him, reported on separate occasions that Chancey threatened to have one of the government's confidential witnesses killed. Specifically, Agent Hutton testified that both witnesses reported that Chancey would have acquaintances of his mix cyanide with heroine and sell it to the confidential witness in an attempt to have her killed. Furthermore, Agent Hutton testified that both of the confidential witness also reported that Chancey intended to "take care of" an Assistant United States Attorney, who was handling his case.

Officer Lamy, Terry Chancey, and Tammy Chancey all testified in a manner consistent with their prior testimony. In regards to their previous testimony, Terry and Tammy Chancey both added that they would take all the steps necessary to ensure that their father could be released from detention. Among these steps were Terry Chancey allowing her father to live with her, Tammy Chancey visiting her father on a daily basis and reporting to pretrial services about her visits, and their posting the required bond. Officer Lamy testified that he still recommends that Chancey remain in pretrial detention. Lastly, B.R. Duckworth, a licensed real estate broker and appraiser in Mississippi, testified in his deposition as to his knowledge surrounding the fire to Price's dwelling.

Following closing arguments by each side, the Court took the motion under submission, but held the matter open until the United States could provide Chancey with the relevant Federal

Bureau of Investigation ("FBI") and ATF reports, which the Court ordered to be produced pursuant to the Jenks Act.

Several hours after oral argument, Chancey's counsel delivered a letter to the Court. Attached to the letter was a declaration under penalty of perjury by a witness offered to impeach the credibility of the government's confidential witnesses.[3] Additionally, on January 18, 2006, Chancey's counsel faxed a letter to both the Court and the United States. Attached to this letter were two ATF interview reports, which had been produced pursuant to the Court's Jenks Act order. Chancey contends that these interview reports further impeach the credibility of the United States' confidential informants.[4]

### III. LAW AND ANALYSIS

Section 3142 of title 18 of the United States Code governs the release or detention of a criminal defendant pending trial. 18 U.S.C. § 3142. If a criminal defendant is ordered detained by a magistrate judge, as in this case, the criminal defendant may appeal such order to the appropriate district judge. 18 U.S.C. § 3145.

In reviewing an appeal of a magistrate judge's pretrial detention order, the district court must perform a *de novo* review and independently determine whether pretrial detention or release is warranted. *United States v. Reuben*, 974 F.2d 580, 585 (5th Cir. 1992). Pretrial detention is only warranted if the district court finds that no condition or combination of conditions will reasonably assure the appearance of the criminal defendant as required and the safety of any other

---

[3] The letter and attached declaration were not delivered to the United States because Chancey's counsel was concerned for the safety of the witness. This letter and attachment will be entered into the record under seal.

[4] This letter and attachments will also be entered into the record.

person and the community. 18 U.S.C. § 3142(e). In making this determination, the district court is guided by the factors set forth in section 3142(g). These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the criminal defendant; (3) the history and characteristics of the criminal defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* § 3142(g).

The United States bears the burden of establishing that no condition or combination of conditions will reasonably assure the appearance of the criminal defendant as required and the safety of any other person and the community. Regarding the appearance of the criminal defendant, the United States must satisfy its burden by a preponderance of the evidence. *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985). Regarding the safety of any person or the community, the United States must satisfy its burden by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). In seeking the detainment of Chancey in the present case, the United States has predominantly focused on assuring the safety of others.

In fulfilling its duties, the Court will first look at the nature and circumstances of the offenses charged against Chancey. Chancey is charged with twelve (12) counts of a twelve (12) count indictment. Specifically, he faces the following charges: (1) five counts of mail fraud all in violation of 18 U.S.C. § 1341; (2) three counts of use of fire to commit a federal felony in violation of 18 U.S.C. § 844(h); (3) two counts of interstate travel to aid racketeering in violation of 18 U.S.C. § 1952(a)(2); (4) one count of possession of a machine gun in violation of 18 U.S.C. § 922(o); and (5) one count of conspiracy to maliciously damage and attempt to destroy by means of fire a building used in interstate commerce in violation of 18 U.S.C. § 844(i), to

commit mail fraud in violation of 18 U.S.C. § 1341, to travel in interstate commerce with intent to commit a crime of violence to further unlawful activity and thereafter perform or attempt to perform an act of violence in violation of 18 U.S.C. § 1952(a), and to possess a machine gun in violation of 18 U.S.C. § 922(o), all of which are in violation of 18 U.S.C. § 371. If convicted on all counts, Chancey faces the possibility of being sentenced to well over one hundred (100) years in prison.

Moreover, although none of the charges creates a rebuttable presumption in favor of detention under section 3142(e), the nature of the charges is quite serious. Chancey is alleged to have been involved in a scheme to defraud the Jefferson Parish Sheriff's Office by billing the Sheriff's office for motorcycle parts never delivered to, nor received by, the Sheriff's office. Furthermore, he is alleged to have participated in a scheme to obstruct justice in pending criminal cases against motorcycle associates and customers of the cycle shop in Plaquemines Parish by enlisting a female employee of the cycle shop to engage in sexual relations with the owner and landlord of the building which houses the Plaquemines Parish Detective's Bureau so that the employee could enter the building without the Detective Bureau's authorization and remove witness statements from it. As part of the same scheme, he is alleged to have set fire to the Plaquemines Parish Courthouse in an attempt to destroy the criminal records stored in the Courthouse. Additionally, he is alleged to have set fire to Price's dwelling in Mississippi as part of a scheme to defraud the MetLife Auto and Home Insurance Company. Plus, he is alleged to have set fire to Norve's truck as part of a scheme to defraud the Progressive Insurance Company. Lastly, he is alleged to have illegally possessed a machine gun. The incidents alleged in the charges against Chancey have caused millions of dollars worth of damage, have involved

numerous episodes of fraud, deceit, and obstruction of justice, have included possession of a dangerous firearm, and have put human life at risk.

Second, the Court will look at the history and characteristics of Chancey. Chancey is not on probation, parole, or other release pending trial, sentencing, appeal, or completion of a sentence. He has strong ties to the local community in that he has lived in the area for over fifty (50) years, has four children and six grandchildren who live nearby, has rarely left the local area, and does not have a strong connection to any other areas. He is a sixty-two (62) year old man who has never been convicted of a crime and has been arrested three times in his life, the last of which occurred in 1986. There is no evidence that he suffers from any physical or mental impairment or that he has a history of drug or alcohol abuse.

Third, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In this regard, Agent Carlton testified that a confidential witness reported Chancey threatened her with a finger in a jar. Significantly, this witness has since been placed into protective custody. Likewise, Agent Hutton testified that two additional confidential witness both testified that Chancey threatened to have a witness killed by having cyanide mixed with heroine and then sold to the witness for intravenous injection. Moreover, according to Agent Hutton, these same two witnesses further reported that Chancey intended to "take care of" an Assistant United States Attorney. Of notable importance is that these two confidential witnesses were interviewed at different times without knowledge of each other's interview, yet both of them were able to identify the Assistant United States Attorney by name and both knew of Chancey's unique cyanide plan. In addition to knowing Chancey's method of carrying out his cyanide plan, both witnesses named the acquaintances

whom Chancey mentioned as possible aids in carrying out the plan. These factors lend substantial credibility to Agent Carlton's and Agent Hutton's testimony, and lend substantial weight to the government's position, notwithstanding the letters submitted by Chancey's counsel.

In addition to the danger that Chancey may pose to these specific government witnesses and the government attorneys handling this case, Chancey poses a danger to this courthouse and this community. If Chancey was allegedly willing to and did burn down the Plaquemines Parish Courthouse to protect his friends from criminal charges, deductive reasoning suggests that he would be willing to and would take much more drastic steps to protect himself from potentially serving the remainder of his life in prison.

Upon reviewing the record, including specifically the transcripts from all four detention hearings, and in light of the nature and circumstances of the criminal charges against Chancey, the danger posed by Chancey's release, and the weight of the evidence as to these two factors, the Court finds that the United States has satisfied their burden of establishing that no condition or combination of conditions will reasonably assure the safety of any other person and the community by clear and convincing evidence. Chancey's history and characteristics and all the conditions proposed by Chancey at the hearing, such as electronic monitoring, residing with one daughter, daily visits by his other daughter, and daily visits by pretrial services, reasonably assure that Chancey will appear as required; however, these conditions, as well as his history and characteristics, will not reasonably assure the safety of others.

Although the Court has performed its own *de novo* review, based its decision solely upon that review, and is confident in the correctness of its ruling, the Court finds assurance in the validity of its decision from the fact that its decision is in accord with the three prior decisions of

a criminally experienced and well-versed Magistrate Judge. It is also consistent with the recommendations of Officer Lamy, who has been on this case since its inception.

## IV. CONCLUSION:

For the foregoing reasons, the Defendant's Motion for Review of Detention Order Pursuant to 18 U.S.C. § 3145 is DENIED.


New Orleans, Louisiana, this __20th__ day of January, 2006.

_____<br>
UNITED STATES DISTRICT JUDGE