UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NUMBER 04-214 |
| JAMES CHANCEY | SECTION "L" (3) |

ORDER & REASONS

Before the Court is the Defendant James Chancey's Motion to Dismiss Superseding Indictment Due to Misjoinder of Offenses or, in the Alternative, to Sever for Trial (Rec. Doc. 263). The Court heard oral argument on November 8, 2006 and took this motion under advisement. For the following reasons, the Defendant's motion is GRANTED IN PART AND DENIED IN PART.

I.  BACKGROUND

The factual background of this case is contained in the Court's Order and Reasons dated January 20, 2006 (Rec. Doc. 150). Rather than recount the entire factual history, the Court will only discuss the facts relevant to the present motion.

On July 16, 2004, James Chancey, Richard Price, and Michael Norve were charged with conspiracy to commit arson, mail fraud, interstate travel to aid racketeering, violation of the federal firearm statute and use of fire to commit a federal felony, as well as the underlying substantive offenses in which the defendants were specifically involved. On June 28, 2006, the Court held that Count one of the original indictment was duplicitous in that it charged five separate conspiracies, not one over-arching conspiracy. *See* Order & Reasons dated June 28, 2006, at 5 (Rec. Doc. 234) ("The overt acts alleged in Count one and the other substantive counts

show that there were multiple conspiracies, involving different persons, committed at different times, committed in different places, and involving different activities."). Rather than dismiss Count one of the indictment, however, the Court allowed the Government to elect how to proceed with its case.

The Government responded with a Superseding Indictment from the grand jury on October 19, 2006 against Chancey and Norve.[1] The 15-count Superseding Indictment alleges that Chancey, the owner and operator of Vernon's Cycle Shop, Inc., organized multiple conspiracies to commit criminal conduct to benefit himself, the cycle shop, and its customers. The alleged conspiracies consisted of: (1) instituting a scheme to bill the Jefferson Parish Sheriff's Office for motorcycle parts never actually delivered to or received by the Sheriff's Office from February 1998 to March 2003; (2) soliciting and planning arson-for-hire on behalf of Price to defraud MetLife Auto and Home Insurance Company ("MetLife") and Norve to defraud Progressive Insurance Company ("Progressive"); and (3) attempting to obstruct justice by setting fire to the Plaquemines Parish Courthouse and destroying records of state criminal cases pending against Chancey's customers and motorcycle associates.[2]

### A.     *Jefferson Parish Sheriff's Office scheme*

Beginning on a date unknown, but on or before February 5, 1998, Chancey allegedly devised and executed a scheme to defraud the Jefferson Parish Sheriff's Office. According to the Superseding Indictment, an employee of the Sheriff's Office ordered motorcycle parts from Vernon's Cycle Shop, knowing that these parts would never be delivered. Nevertheless, the

---

[1] Price pled guilty to Counts one and seven of the original indictment on March 16, 2005 and awaits sentencing.

[2] The Superseding Indictment drops the charge for possession of a machine gun.

Sheriff's Office paid Vernon's Cycle Shop for these parts and Chancey returned a portion of such payments to the inside employee placing the allegedly bogus orders. In Counts one through four, Chancey is charged with mail fraud and conspiracy to commit mail fraud with respect to this scheme.

### B.     *Arson-for-hire schemes*

Beginning on a date unknown, but on or before January 10, 2002, Chancey allegedly devised and executed a scheme to defraud MetLife. Chancey allegedly traveled from Louisiana to Mississippi on January 10, 2002, in order to burn down Price's dwelling, for which Chancey received a $5,000 check from Price made payable to Vernon's Cycle Shop. The Government alleges that Price then used the U.S. mail to submit an insurance claim to MetLife, which in turn paid Price $48,150 for the damage to his home. In Counts five through eight, Chancey is charged with mail fraud, interstate travel to aid racketeering, conspiracy to commit interstate travel to aid racketerring, and use of fire to commit mail fraud with respect to this scheme.

The Superseding Indictment also alleges that Chancey traveled from Louisiana to Mississippi on March 5, 2002, to commit arson of Norve's truck, at Norve's request. Norve allegedly paid Chancey for the job and also used the U.S. mail to submit an insurance claim to Progressive, which in turn paid Norve $13,667.50 for the damage to his truck. In Counts nine through twelve, Chancey is charged with mail fraud, interstate travel to aid racketeering, conspiracy to commit interstate travel to aid racketeering, and use of fire to commit mail fraud with respect to this scheme. Norve is also charged with mail fraud and conspiracy to commit interstate travel to aid racketeering in Counts nine, ten, and twelve.

### C.     *Plaquemines Parish Courthouse arson*

Finally, the Superseding Indictment alleges that Chancey devised a scheme to obstruct

justice in pending criminal cases by burning down the Plaquemines Parish Courthouse.  Chancey allegedly referred a female employee of the cycle shop to a customer who was the owner and landlord of the building that housed the Plaquemines Parish Detective's Bureau so that the woman could gain access to the Sheriff's office files.  The female employee allegedly engaged in sexual relations with the customer in order to gain access to the Detective Bureau and, at some time around December 2001, entered the Bureau and removed witness statements from a specific case file.  On or about January 12, 2002, Chancey allegedly set fire to the Plaquemines Parish Courthouse in order to destroy criminal records, causing more than $2,500,000 worth of damage.  In Counts thirteen through fifteen, Chancey is charged with arson, conspiracy to commit arson, and use of fire to commit conspiracy to commit arson with respect to this scheme.

**II.     PRESENT MOTION**

Chancey has filed a motion to dismiss due to misjoinder of offenses, or in the alternative, to sever for trial.  Chancey argues that under Rule 8 of the *Federal Rules of Criminal Procedure*, the four conspiracies are too dissimilar to be joined together.  Moreover, Chancey argues that even if the proposed joinder satisfies Rule 8, the charges should nevertheless be severed under Rule 14, which provides that "[i]f the joinder of offenses or defendants in an indictment . . . for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  Chancey argues that there is a substantial risk that a jury could conclude that he must be guilty of something simply because of the multitude of charges against him.  The Government argues that the charges are properly joined under Rule 8 and that joinder is not unduly prejudicial under Rule 14.

**III.    LAW & ANALYSIS**

>Rule 8 provides for the joinder of offenses and defendants in criminal cases:
>
>(a) Joinder of Offenses.  Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
>(b) Joinder of Defendants.  The indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

Fed. R. Crim. P. 8.  Joinder of defendants is only permitted where the defendants are alleged to have participated in the same act or transaction.  *See United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997).  "It is easier to justify joinder under Rule 8(a) because, unlike Rule 8(b), it also permits joinder of offenses which are merely of 'the same or similar character.'"  *Id.*

Joinder is "the rule rather than the exception" and Rule 8 is "construed liberally in favor of initial joinder."  *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976).  This is because avoiding multiple prosecutions is a policy dictated by considerations of both fairness to defendants and efficient and orderly law enforcement.  *See Rinaldi v. United States*, 434 U.S. 22, 27 (1977).  However, in this case, the joinder of the Jefferson Parish Sheriff's Office scheme, the Plaquemines Parish Courthouse arson, and the arsons-for-hire does not satisfy Rule 8(a).  The Court has already concluded that these schemes are unrelated.  *See* Order & Reasons dated June 28, 2006 (Rec. Doc. 234).  While Chancey was allegedly involved in all four schemes and although the Jefferson Parish Sheriff's Office scheme and the arsons-for-hire both involve fraud, and the Plaquemines Parish Courthouse arson and the arsons-for-hire both involve fire, this is where the similarities end.  Thus, for the reasons previously stated, the Court finds that the four schemes are not the same, nor of similar character, nor based on the same act or transaction, nor

parts of a common scheme or plan.  Fed. R. Civ. P. 8(a); *see United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999) (finding joinder improper where the defendant "allegedly used distinctly different methods" and "targeted distinctly different victims").[3]

## IV.   CONCLUSION

Accordingly, IT IS ORDERED that the Defendant's motion to dismiss is DENIED and the Defendant's motion to sever is GRANTED, and that the Superseding Indictment is hereby SEVERED and that there shall be at least three separate trials:  (1st) Plaquemines Parish Courthouse arson; (2nd) arson-for-hire scheme or schemes; and (3rd) Jefferson Parish Sheriff's Office scheme.[4]

New Orleans, Louisiana, this   29th   day of    November   , 2006.

                                                                             UNITED STATES DISTRICT JUDGE

---

[3] Even if all of the schemes could be joined under Rule 8, the Court nevertheless finds that the counts must be severed under Rule 14 given the risk of prejudice created by joinder in this case of multiple arson and fraud schemes.  *See United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990) ("Clear prejudice may result when the jury is unable to separate the evidence and apply it to the proper offenses, or where the jury might use the evidence of one of the crimes to infer criminal disposition to commit the other crimes charged."); *see also Drew v. United States*, 331 F.2d 85, 88-94 (D.C. Cir. 1964).  While the offenses are distinct in time, the nature of the offenses are similar, which creates a possibility that the jury may infer criminal disposition.

[4] The Court will defer determining whether or not the two arson-for-hire schemes can be tried jointly, especially since Norve has not challenged joinder in this case.  While the Superseding Indictment does not allege that Norve participated in Chancey's scheme to burn down Price's house, the two arson-for-hire schemes may be sufficiently related to be tried together.